We're ready for the next case, 25-7052 Harden v. Hedgecock. Good morning, my name is Bob Blakemore. I'm the attorney for the appellants in this case. It is a case involving sexual abuse of two former inmates at the Pushmataha County Jail. And this appeal is with respect to a Monell claim against the sheriff in his official capacity. I wanted to begin by addressing some issues that really haven't been touched on in the briefing. And that's because I didn't file a reply. And it's something that I really wasn't expecting, that the sheriff would continue to challenge the underlying violation. So one of the prerequisites of any Monell claim, or most Monell claims ordinarily, you have to show that there's an underlying constitutional violation by one of the employees or officers of the governmental entity. You do, and just to be clear, Mr. Blakemore, so that my silence does not suggest otherwise, there's a question on whether you should have filed a reply brief if you had something to say. I mean, making new arguments, new arguments, in the context of an oral argument is not the time to do it. Okay, you can go ahead and tell us what you want to tell us, but there's a problem with that. Okay, well, I wanted to just address that. One, we do address the underlying violation in our brief. And we address the evidence that supports on both Mr. Smith and Ms. Works, and the fact that there's actually another Tenth Circuit decision in the case of Ms. Works that holds that under the first element of qualified immunity, that a reasonable jury could find that she was subjected to sexual abuse in violation of her constitutional rights. So I see the fact that they're continuing to argue that as sort of a collateral attack on the Tenth Circuit's order. They also raise... Why did you go ahead and address it in your opening brief then? Well, it's a necessary element, and I wanted to just... Wouldn't it have been easier just to simply recite what you just recited, which is the Tenth Circuit has already ruled on with respect to Ms. Works, the constitutional violation issue? Well, I do put that in the brief. Yeah, but you went through and addressed it anyway. Yes. Yeah, right. I do, I do. I do in the brief. I was just pointing out that the fact that they are continuing to challenge that, I don't think that they can. But I believe that even if they could, that the evidence is there that supports that there's an underlying violation with respect to Ms. Works and with respect to Mr. Smith. They raise an argument with Mr. Smith under Rule 412. And if you look at the district court's order, the district court said that they did not appropriately address that. I actually raised that in my response brief below when they were trying to get into his history of sexual conduct. They did not address it in the record below, and now they're raising it for the first time on appeal. Well, to your point, we're dealing with the Minnell claim. And so the question is whether there's a policy that causes an unconstitutional injury. And so part of that also goes to the question of deliberate indifference. So speak to me, please, about why one should view either sheriff, Duncan or Hedgcock, as being deliberately indifferent in these circumstances. And you can start with Duncan if you would. OK, so under the Duncan administration, there's evidence, significant evidence, of deliberate indifference in that there was a pattern of sexual misconduct under their own policy by Ms. Nichols, the jailer Ms. Nichols, with respect to another inmate who went by the name of Little Jeff. She actually had sex with him multiple times in his cell, in the laundry room, and became pregnant with twins from their relationship inside the jail. And that's consensual sex, is it not? It was consensual sex. It was still sexual misconduct. Well, the point, it violated the jail policy, but the point, at least in part, for deliberate indifference, not only does there have to be a pattern from which there could be the belief that there would be a constitutional injury, but there has to be notice of that. And so if the only thing that is going on is violations of jail policy, i.e., I mean, albeit related to sexual activity, then why would the Duncan administration have been on notice that she may well rape, essentially rape somebody? Because you go from this pattern of sexual misconduct, which is also a felony under Oklahoma law, in addition to being a violation of their internal policies. But it just shows a fundamental lack of supervision. And it's not hard to get to coercive sexual conduct, that there's an excessive risk of coercive sexual conduct is going to happen. The fact that he's allowing this to happen in the jail, knowingly allowing it to happen in his jail. That's what I want you to address, the knowing part of it. Isn't there, I mean, I didn't see it in your, strangely, in your briefing, but the district court recited that Sheriff Duncan knew that Nichols was sleeping with Little Jeff, and that Little Jeff said in his deposition that Duncan knew they were sleeping together because he made it a point to come back and make sure I knew that he knew I was doing it. And he told me I needed to quit. That was Sheriff Duncan, according to the district court. Yes.  And that is in our brief. Isn't that really, I mean, you've got actual knowledge there by Sheriff Duncan. Correct. There was actual knowledge by Sheriff Duncan that this was. And him telling them, at least the inmate, he needed to quit. Right. And then his, and this is in our brief as well, Little Jeff's testimony was that after he told him he knew what he was doing, that he just laughed and walked off.  And the conduct continued. And so, and this is under the umbrella of this policy that they had that violated the Oklahoma Jail Standards of one jailer, one shift. So the only reason that this was able to continue and to happen is because they were knowingly violating the Oklahoma Jail Standards. Is it categorically, should one presume that it's categorically a constitutional violation because something violates the Oklahoma Jail Standards? No, sir, it's not categorically. It's evidence of, and that's under Lopez v. LeMaster, when you're put on notice, I mean, they're on constructive notice that it's a violation. They know what the jail standards require. And there's an admission, one, that the Department of Health issued reports telling them this was a violation. And also Hedgecock in his deposition admitted that the one jailer was a violation of the jail standards. But when you couple that with, I think that in and of itself, that's not a constitutional violation. But when you couple that with the sexual misconduct that was happening at the jail, in addition to the other evidence of just, which would come in, I believe, under Tafoya, of just kind of the debauchery, the drugs coming in, the weapons, the drug use, the fact that there's – Well, weapons and drugs do not – how do weapons and drugs give you a substantial risk of a sexual assault? I mean, those two things are different, at least as far as I can tell. And so speak to me why one should have been on notice because there's drugs and guns going in the jail, that there may be a sexual assault by a guard on an inmate. Well, again, I think you look at it in the totality of the circumstances. You do, and the totality of the circumstances in the Duncan administration was one guy, right? I mean, was there any evidence of Nichols doing anything with anybody else? Yes. Was there any evidence – oh, really? Yes. There was another inmate named Bell, and that's in my brief as well. Okay. And going beyond Nichols, was there anybody else? Well, my client, Sean Smith. So – and those were instances prior to Mr. Smith. But the – What's in the record about the Brian Bell, with her interactions with Brian Bell? That Sheriff Duncan admitted that there was a sexual relationship between Bell and – inmate Bell and Ms. Nichols. Was that about the same time as the relationship – the sexual relationship with Little Jeff? That's my understanding, yes. Okay. And that – do you know where that is in the record? It's in – I know it's in my – I know it's in my brief. It's in my notes here. So – So you would have two assaults that you're suggesting that Sheriff Duncan knew. Yes, at least – And really multiple, apparently, times with Little Jeff, but another assault with Nichols with Brian Bell. I don't know if his first name is Brian, but it is Bell. I don't either. I have it in my notes, but I could be wrong, yeah. But in any event, he was another inmate. Yes. What do we do with the Graham decision? Why is this an assault at all? I mean, if there's consensual sex, it is not, right, a constitutional violation? Again, it's sexual misconduct. And I believe that there's – it rises to the level – you can't allow, as a sheriff, you can't allow this kind of conduct. To be clear, no one is sanctioning that conduct. But, again, it goes to notice of an excessive risk. And actually, Graham, I think, helps that argument because what Graham says, as you know, is that when you cross the line to coercive conduct, then it becomes a constitutional issue. He already had a legal issue with respect to felonies being committed. So he was on notice of the substantial and excessive risk that there would be a – that it would cross the line into constitutional violation, and actually that it was substantially certain based on the inadequate staffing, the utter lack of supervision. So then going to Ms. Works and Sheriff Hedgecock, the district court held that, one, that they were only on notice of the consensual sexual relationship, which, again, we've talked about that and why I believe that that is – that's more than sufficient to put them on notice of an excessive risk. But what – I think more so what the district court said with respect to Hedgecock is that he made changes to the staff and there was more – they took the policies more seriously. They're a new policy language. The thing that – for one, I don't know that there's any – I don't really see that there's any relevant evidence that that had any impact. But the biggest issue with Hedgecock is that what he did not do is he didn't change the single jailer policy. He continued to have the one jailer, one shift policy even after the debacle under Sheriff Duncan. And is there any – what is the evidence that draws a line between the single jailer policy and the assaults that took place here? I mean, why should that be obvious to me? Well, because it's unlikely that it would happen if you had staffing, even as just required under the minimal guidelines, and actually Sheriff Hedgecock conceded during his deposition that sexual abuse is, quote, much less likely if you have double staffing of both genders. And that's the issue that he did not address. And then in that environment, you had what happened to Ms. Wirtz. And I see my time is up. Thank you, counsel. May it please the court, Allison Levine for appellee B.J. Hedgecock in his official capacity as sheriff of Pushmataha County. As you're aware, this case involves two vastly different alleged sexual assault incidents, which occurred at two different times, under two different sheriff's administrations, under two different sets of policies and procedures. The only thing these two incidents have in common is that neither were caused by the policies, customs, training, or supervision at the Pushmataha County Jail. Let me be clear, by virtue of speaking of two different regimes, you're here also defending the Sheriff Duncan regime, right? Yes, correct. Because of the way the municipal liability, yes. Oh, in their official capacity. Well, then speak about why, at least in that moment in time, relative to the assault on Mr. Smith, there would not have been deliberate indifference in the Duncan regime relative to that assault. There was no deliberate indifference in the Duncan regime because there was no, he was aware that Nichols had had sexual relationships with inmates before, inmate Bell and inmate McCarran. But he was aware. And there was a no tolerance policy. No such thing as consensual sex under their policy. And he disregarded that policy more than once. Correct. Right. So why isn't that deliberate indifference? He disregarded a zero tolerance policy and labeled since, said it was because it was consensual, that I guess there's an, is there an exception to the policy when inmates have consensual sex with the officers? There was no exception to the policy. Of course not. Right. But he disregarded that policy. He did. But a policy violation does not equate to a constitutional violation, even where alleged sexual assaults of inmates occurred. And that was made clear in Hovater v. Robinson, which we discussed in the briefing. Why did this policy lead to, had he terminated her and had her criminally charged as he did in these instances, she never would have been there to assault again. Correct. That is true. But when we're talking about the Monell liability and what he has to have constructive notice of, we're talking about constructive notice of constitutional violations. And this was sexual assault by an officer, by an officer that was rape, considered rape under Oklahoma law, and that's not sufficient notice to say, hmm, we've got a little problem with this particular officer who's doing this right under our noses more than once with two different inmates. We're just going to tell the inmates to stop. Again, a state law violation also is not a constitutional violation. That's from Davis v. Shearer, the 1984 U.S. Supreme Court decision. Well, my understanding is you're suggesting this wasn't a problem because it was consensual. No, I'm not saying it was a problem because it was consensual. I'm saying there was no history of, there was no custom of permitting constitutional violations, because before this lawsuit was filed, there was no evidence that any inmate had ever alleged that their constitutional rights were violated. There was no allegations of non-consensual sex, of coercive sex, of sexual assault. Does there have to be an allegation? Oh, you're saying somebody has to complain before they have notice? There would have to be evidence of that. There is evidence. But the evidence is of consensual relationships. That's what I'm just asking you. So your argument is there's evidence of an inmate improperly having sex, and they knew about it, but they're going to ignore it because it was consensual. They labeled it consensual. Isn't that right? Yes. So that is the argument you're making. That's what the district court accepted. Let's talk about what you're doing in this case. You're arguing that both of these individuals were having consensual sex with the inmates, aren't you? Yes. Right. And what happened to them? They got terminated and charged under Oklahoma law, right? Yes. So what's the difference here? Again, the difference is that there was no- According to you, it is consensual sex. Both of these. Yes. And yet these people were terminated and charged. Yes. For consensual sex as you label it now. Right. So what's the difference here as far as notice? Well, the difference with works especially. Again, we are in a- Let's talk about the first with Duncan. With Duncan. Yeah, that's the important one. Duncan's the one that knew about all these incidents and did nothing about it. Yes, he did. Because they were consensual. Because they were consensual. Right. Because there was no evidence of constitutional violations. According to you, these were also consensual, right? Yes. We believe the evidence shows that these were also consensual. So why wasn't it okay? Why were they charged and terminated, both? Well, Nichols was charged and terminated because, again, I want to make clear that it was not Mr. Smith that went to jail administration or went to the OSBI and said that he'd been sexually assaulted. Jailer Nichols was found going through inmate property with Mr. Smith. Are you suggesting that as long as nobody complains, as long as the inmate's happy with the sex and enjoys having sex with the officer, it's not, it can't be, there can't be notice of violations of the policy? There would be notice of the violation of policy, but there would not be notice of constitutional violations. And so what I was explaining. And it's not a constitutional violation because they labeled it consensual. Yes. And you're labeling these consensual also. Well, prior to Smith, even assuming that the Smith, the sexual encounter between Nichols and Smith was not consensual, assuming that is the case, there is absolutely no evidence in the record that the sexual encounters with Bell and with McCarran were not consensual. There's no evidence of that. No allegations of constitutional violations, no allegations of coercive sex, no allegations of sexual assault. It was a violation, though, of the zero tolerance policy. Yeah. Yeah. Yes. Yes, it was. And nothing, nothing was done about that. Correct. Nothing was done about the policy. But again, a policy violation is not a notice of constitutional violation. I wanted to address Mr. Smith's argument and Ms. Work's argument as well, that one of the customs that led to the alleged sexual assaults in the jail was single staffing. I would like to make clear that when Sheriff Hedgecock took over in November of 2016, he was aware that this had happened, that Jailor Nichols was actually in the jail herself because of the sexual contact with Mr. Smith. He was so intent on preventing something like this from happening again that he actually called the jail inspection division and requested an additional jail inspection. And what that clarified was that the only reason that single, single jailer staffing had triggered any kind of violation of the Oklahoma jail standards was because they were also operating dispatch out of the jail at the same time. And once the dispatch was moved from the county jail to the Antlers Police Department, the jail was in line with Oklahoma jail standards. By having one person. Yes, by having one person. Because we are, we've previously been instructed that we can't assume that on staff that having a male, single male jailer on, on staff is, creates a risk of sexual assault to a female inmate. And it's not that. We've been, we've been instructed. In, yes, in, in Hoverder v. Robinson. Okay. On page 1068 of that decision. Okay. We, the, the court stated that we cannot assume that every male guard is a female. And in this case, we have, although Byers was the only, the only jailer on staff, he was not the only person who could deal with female inmates. So we did not have a situation here where a male jailer was being forced to interact with female inmates, you know, against the jail standards or against jail policy. There were female deputies that were on call that were available to come in. There were female police, police officers at the Antlers Police Department that were also available to come in and interact with female inmates as needed. So as far as plaintiff's argument, that staffing the jail with a, a single jailer led to a sexual assault, the evidence just, just isn't there, especially not in this case. And does that same line of reasoning as it relates to the evidence apply in the Duncan regime as well, or is that different? No, it would apply as well. We got the clarification from the jail inspection division on why the jail had been previously cited for, for having single staffing. So we got the clarification later, but the, the rationale is, is the same. There is no automatic correlation between having a single jailer policy and, and, and the, the, the increased risk of sexual assault. Yes, yes, that is correct. And I think what we have there is a, a, a situation where it would be not enough staffing to, to cover the entire jail, a population issue where you're, you have a jailer managing dispatch, you have a jailer managing everyone in the jail. That's a completely different issue. And for municipal liability to attach, there has to be a direct causal link between the policy, the custom and the alleged constitutional violation. It has to be closely related to the claimed injury. And so I don't think the single jailer staffing, whether we're talking about works or whether we're talking about Smith, I don't think that's, that's closely related to the injury here. I also want to address plaintiff's argument that you can go from sexual misconduct to sexual assault. I think that flies in the face of the other decisions that we have from the Tenth Circuit. You have Graham versus Logan County, which established, you know, consensual sex does not violate constitutional rights, that there has to be some level of, of coercion or force required for it to be non-consensual. Then it was made clear in the Qualified Immunity Appeal taken by, by buyers on works claim that in the Tenth Circuit, there's no, there's no presumption of non-consent. So when we're looking at the sheriff having known about consensual sex between inmates and, and Nichols, I, if, if we cannot assume, if a court cannot assume a presumption of non-consent, how is the sheriff to assume a presumption of, of non-consent? Especially if you're continuing the policy and the custom as it is, how can we assume that based only on, on consensual sex between jailers and inmates, that we would then move to non-consensual sexual assaults? I guess they assume it because they have a zero tolerance policy. That's why they assume it. They have a zero tolerance policy. But at the same time... That's because you don't really want to have to try to decide whether, you know, an inmate's sex with an officer is consensual. I mean, zero tolerance takes care of that. Yes. I mean, there's a lot, there are circuits that have, that the case law says there is a presumption. We do not. We say you have to have overwhelming evidence that it was non-consensual. And I don't believe there's been a case of that in this circuit. Even, even... The very nature of the relationship is non-consensual. I think that goes against the very nature of the, of the relationship being non-consensual. I think that adds a power dynamic into, into the equation that I don't think that the, the Graham... Well, Brown came after, Brown v. Flowers came after Graham, and that's where we outlined what you have to have to show it's non-consensual and it's overwhelming evidence because of that power relationship, because of it. We stopped short of, of course, saying there's presumption it's non-consensual, but some courts have. Right. And because of that power relationship. Right. Regardless of whether that, that policy was actually enforced or not, what it comes down to is, is Nichols was trained on the policy. And we have a very strange situation here where the plaintiff himself, Mr. Smith, was deposed and admitted that he knew that Nichols had been trained on the policy, he knew that other staff had been trained on the policy, and it, and it occurred anyway. So we have, when we're looking at the failure to train claim, we also have the lack of direct causal link between any alleged failure to train and, and the sexual assault that's been claimed by, by Mr. Smith. And I think that's especially true in the works case. Is there a failure to train claim here? I thought there was a failure to staff and failure to supervise. Yes, there's a failure to train. Okay. Claim as well. And then when we're looking at training on the works claim especially, once, once Sheriff Hedgecock came in, everything was overhauled. He, he cleaned house, so to speak. New jail administrators, new undersheriff, new policies and procedures, new training. And the evidence in that. The policy and procedure, as far as this is concerned, didn't, didn't change. It was still zero tolerance. Yes, it was a different. He enforced it. Yes. He enforced it. Yes, it was, it was a different policy with different verbiage, but yes. It was the same. It was zero tolerance, tolerance policy. And he demonstrated, you know, that he absolutely enforced it. He took over in November of, of 2016. And this would be the first. Would, would you say that these two instances certainly put the, put you on notice that there was, you know, that there had been sexual assaults in the prison? Yes, I would say after works, works would, would be an instance. Both of them, really. I mean, you're now on, you're now on notice. Yes. So if someone comes along, you know, they're going to point to these assaults as having put you on notice. Yes. And why is that different than the, than with the, the conduct with Little Jeff and Nichols conduct with Little Jeff and, and Bell? I'm still failing to understand why those didn't put you on notice because you're making the same argument right here today that these instances were non-consensual. And you're labeling them non-consensual. So I think what you're telling us is, if I'm understanding correctly, as long as you label something or the sheriff labels something as non-consensual, you're not on notice of a problem. It's not a sexual assault. All you got to do is label it. But to me, that's a fact question, particularly considering you're calling these assaults non-consensual. That's a fact question. And certainly not, shouldn't be the deciding factor. You shouldn't be able to label something as non-consensual and then say you don't have notice of any sexual assaults going on. Well, I am well over my time. If I could address that. Please answer the question. Okay. It's not a matter of the sheriff or the administration labeling it consensual or versus non-consensual. It was the fact that no inmate prior to the Smith and Works lawsuit being filed had ever labeled it as non-consensual. All right. So if there's, let's say there's clearly non-consensual sexual assaults going on, but nobody's complaining about it, but they know about it. That okay? No, that would not be okay. Then they have notice. No, and that's not what occurred here. So if nobody complains and nobody files any kind of action, then that's the problem. If nobody has complained and if there is no evidence that the sheriff knew of non-consensual sex between jailers and inmates. What he's labeled, what the sheriff has labeled non-consensual sex. Well, again, that goes back to. I'm just saying your label here is also consensual, and that's problematic because that's a fact issue that's been resolved against you, at least with one of these. And I'm just saying I wonder about saying it makes it so, you know? Well, the two incidents that are in the record are with Bell and McCarran, and McCarran was deposed and there was no claims that it was non-consensual. Okay. So, again, it's all about the label that people put on it. That the alleged victims of the inmates would put on it. Okay. Thank you, counsel. Thank you for your time. I'd ask that you affirm the district court's grant of summary judgments. Try to balance the books a little bit, Mr. Blakemore. You have six minutes. You certainly do not need to use them all, but you have them. Maybe just make one point. Okay. Specifically with respect to the argument on Sheriff Hedgecock that he basically fixed the problem by moving the dispatcher out to the Antlers Police Department. I don't understand that. I really don't. The evidence is, again, that you have one jailer supervising the jail, and that was the policy all the way through. Yes, but what I understood to be counsel's position was that when they were cited by the Oklahoma authorities about that, what they were citing them for was having that same jailer do dispatch authority. That one jailer does not necessarily correlate to a substantial risk of sexual assault. Well, no, it doesn't, unless you have notice that there's an excessive risk, which they did here. And that goes back to this question of what one is responsible to do and labels. I mean, the bottom line is it was your burden as plaintiff to put forward evidence to show that those prior sexual assaults were non-consensual, and there was no evidence to that effect, right? And I'm talking about the ones related to Little Joe and the other person. There was no evidence that they were non-consensual. There's evidence, again, going back to what I said before, is that it was completely out of control. That's not answering my question. My question is, was there any evidence related to either one of those people or otherwise to indicate that that conduct between Officer Nichols and those people was non-consensual? I think it was coercive. Well, that's a separate question, because Graham made it a separate question. Whether intuitively that makes sense or not, I don't know. But Graham, as I understand it, suggested we draw a line between consensual and non-consensual, irrespective of whether Oklahoma law says as a matter of law, because of the disparity of power, it can't be consensual. Get that. Understand that. Agree with it. But that doesn't go to this question, right, that Graham draws a line between consensual and non-consensual. Yeah. But, again, the ultimate question is whether they were on notice of an excessive risk. Of non-consensual sex. Right. And they were. All right. Tell me why, based upon two instances in which apparently it was consensual sex. Do you have any evidence to the contrary in the record that those two prior instances were non-consensual? No. I think they were coercive. And it was excessive. I mean, you've got, again, multiple, it's going on all the time to the point where this, she became pregnant with twins with this. I mean, if that doesn't put you on notice of an excessive risk of sexual abuse, I don't know what would. It clearly does. Well, how does a zero tolerance policy play into this? Isn't that the point of a zero tolerance policy is you don't make those kind of determinations because it's really hard to make in this instance? I mean, isn't that the whole point? Yeah, because drawing the line between what's coercive and what isn't coercive in the power dynamic, the fact that this is going on to the extent that it was creates an excessive risk that there will be constitutional violations. And yes, the repeated violations of the zero tolerance policy, the sheriff knew it and did nothing. And then the next sheriff continues this policy of staffing the jail with one jailer. And although the district court found that there was the availability of antlers, police and deputies to provide backup, there's really no evidence that that was happening. It just, again, Byers was all by himself with no supervision. And that's because of the one jailer, one shift policy that was continued. And after notice that it was, there was an excessive risk of constitutional violations. And unless you have any other questions. No, thank you, counsel. Thank you. Case is submitted. Court will be in recess until 9 a.m. tomorrow.